Good morning. I am DC Court. The tribes are comprised of people. That's probably the most important sentence I can say today. The other thing that I've learned in this case is that land doesn't vote. The California Ranchery Act has been held in law by several courts who have reviewed it. In each case, they found that there's been no jurisdictions bar under 2401 because the law itself, as described by President Nixon, was a complete failure. It didn't do what it set out to do. The Meshewal Wappo Tribe has been in existence since 1934. How do we know this? We know this because under the Indian Reorganization Act, they took a vote of 14 members of the tribe. They decided that they would organize. Yes, they didn't have a constitution, but they had members. And that's where this tribe is first recognized, and that is where the government established a relationship with the tribe. The government and the judge in the District Court have concluded that because the rancheria, that is, the detailed plan passed it individual, in one case, a white person, that that somehow terminated the government's responsibility and relationship with the tribe. And this is a key distinction because there's a continuing... did not terminate the tribe. No, Your Honor, that was the perception, and I want to clear the perception up because the government has considered that the tribe was terminated when it distributed the land to the distributees. And as you said, part of the problem we've had is public words. Restoration. Recognition. Intermination. And the termination that took place, and I think our moving papers make this clear, the termination that took place was invalid. We've never said that the tribe has been terminated. What the government did at that point was they decided that they were not going to recognize the tribe anymore because under the California Registry Act, one of the specific provisions was that the government would no longer have a relationship with the distributees. And that's really important because that didn't terminate the tribe. And the district court found that the tribe was not terminated. The government has considered us terminated, has considered the tribe terminated since that date. That is not the case. And this is the two-tribe theory that has been advanced, that the distribution to the Alexander Valley Rancheria is a separate tribe from the Mississauga tribe. That's ludicrous. James Adams was identified on the list of individuals who was not entitled to vote in 1934. He was a non-Indian. The distribution of the Rancheria, two-thirds of that land went to James Adams because he occupied the property. You have a defective termination of the Rancheria. And you have a government who has taken a position repeatedly that the Alexander Valley tribe of the Mississauga was terminated as well. This act didn't come into existence until 1994. But the government is in a continual relationship with the Mississauga since the termination of the Rancheria. The Mississauga still appear in federal court under the Indian Welfare and Child Act. The Mississauga still have a petition to the BIA. The first time that the government repudiated its fiduciary duty was when Larry Epelhock in June of 2009 said that he was not going to administratively restore, and that's the confusion. They were never terminated. The government has continued to informally recognize the tribe. The tribe has petitioned the BIA and worked through the administrative process. The regional BIA supported the application because there was a policy change in the 70s and the policy change was this. The government recognized that the CRA was a failure. It didn't do what it promised to do. It didn't provide benefits. And this court in Tilley-Hartway recognized that 2401 was not a bar. The reason the Guapo were not restored as part of Tilley-Hartway is because their land was sold in 1977. Tilley-Hartway was a land-slinging case. They had no land. There was nothing that could be distributed back. We're here today because, in fact, this very litigation, I believe, is a continuum breach of the fiduciary duty to treat the tribes with respect. This action is important for a whole bunch of reasons, but the primary reason that it's important is because your decision today, finding 2401 that jurisdictional bar will foreclose restoration of every other tribe that was unlawfully terminated out of the California Rancher Rehabilitation Act. Because if a tribe has a prior relationship with the government, and clearly the Guapo do, they are not eligible for the Part 83 promises. That is, under 7G of Part 83, a prior relationship prevents them going through the restoration process. Your decision today could wipe out Amy Shams, the Duiz de Guapo, and several other California tribes. We'll get the relief that the government promised them, that the government has a duty to, is to have and acknowledge relationships as derived from the Constitution. The Constitution says that the tribes shall remain sovereign. This government has turned its back on the Indians repeatedly, and it continues to do so through a BIA that is unresponsive because of the politics that are involved. It just, just for court, gave short shrift to the claims because there was a belief that everything derived from the California Rancher Rehab, it does not. Everything derives from the fact in 1934 that 14 Indians voted to organize under the Indian Reorganization Act because they voted they continue in existence. This tribe is 345 members now. It continues to hold meetings. So they never followed the specific requirements to organization, to have a constitution, and to all the other requirements? Those are not requirements. Respectfully, Indians are sovereign nations. They can decide what they want to do. The only requirement was that they vote. And they did. There's an easy trap for the unwary that they were required to have some formal constitution that they were required to, and they were required to have assistance from the government in order to do this. That was never provided. The administrative director is clear that the federal government had a number of duties to assist the Indian tribes. There are a number of tribes that are landless. This goes back to my opening statement. People. Tribes are comprised of people, not land. The whole purpose of Rancher Rehab was to give tribes a land base so that they could become successful. Without that land base, the government feared that there would be a loss of tribal identity and existence. The government wholly failed to revive those needs. But what it did in 1934 under the IRA was recognize the existence of those tribes. So why didn't the tribe take action in 1961? The tribe is continually taking action. But the best question is why didn't they take action in 61? Because no one knew. How many Indians do you think read the Federal Register? Most of them were illiterate at the time. They were landless. Their land had been distributed. They were migrants. That's why T.D. Hardwick evolved. In 1961... When the tribe did not refile, its action was dismissed without prejudice to T.D. Hardwick. Correct. There's no point of refiling for that particular claim because the government after T.D. Hardwick had told the Indians repeatedly that they were convinced that they would be restored. That their claims, while they couldn't restore the land for the very reasons the land had been sold, that they would grant them recognition The process has been long and protracted, but that fiduciary duty continued. The tribe has made repeated efforts, the last effort being the foreclosure of the process by Larry Echo-Hawk. And a letter is very critical in this case because it's the first time that the government has said we're not going to do what we promised. Your only avenues open to you are the Part 83 process. That is, go through the entire recognition process again, and which I've already just explained is very applicable because therefore it's closed under 7G of Part 83, or an act of Congress. There are chances of being restored by Congress or remote. Congress hasn't acted on the California Rancherty Act since it was established in 57. This is a critical case in a critical time. This Court has repeatedly said that 2401A is not a jurisdictional part of the claims. There is a continuing fiduciary duty. It needs to be respected. I will reserve the rest of my time and repeat the two-fold. May it please the Court. My name is Rachel Heron on behalf of the Federal Appellees. The Federal Government has never recognized a government-to-government relationship with any group called the Mishawalwapo Tribe of Alexander Valley. The group that appears before this Court, which goes by that name, nevertheless argues that Interior is required to put it on the list of federally recognized tribes. Now, it's offered two reasons why that's the case. According to Mishawalwapo, it was recognized at some prior point, and Interior unlawfully withdrew their recognition. Now, in the District Court, Mishawalwapo did argue that that withdrawal of recognition occurred in 1961 with the termination of the Alexander Valley Rancheria, and then they've argued on appeal that actually it occurred at a different, unknown point. The District Court was correct to dismiss the tribe's suit in two ways. The first, because it's time-barred, and the second, because it has been waived, and even if it wasn't waived, it would need to be administratively exhausted before it could be brought in the courts. So, before explaining why dismissal was appropriate, I want to say just a little bit about the termination of the Alexander Valley Rancheria and how that termination plays into the two theories for relief that have come up in this case. The Rancheria was a small reservation in the county. Mishawalwapo represents the least members of people who lived on the Rancheria in 1935. By the late 1950s, however, there were only two families left that had any interest remaining in residence on the Rancheria. When Congress passed the Rancheria Act in 1958, Interior conveyed the lands of the Rancheria, which had been previously held in trust to the then residents. By the terms of statute, all the persons who received land in this way and their descendants lost their status as recipients. And Interior published the announcement of the distribution of the assets along with the list of the terminated individuals in the Federal Register in 1961. Now, below, Mishawalwapo argued that it was the 1961 termination that withdrew federal recognition from the group that appears before this court. I want to take just a moment on that because I understood counsel to represent in his time before this podium that that is not what they argued. I would refer this court in the first place to the complaint that was filed below. If you look at the complaint, which is in the first volume of the excerpts of record, on page 22, you can see that the First Amendment complaint asserts that Mishawalwapo was terminated and lost recognition in 1959. On pages 29-30 of the complaint, it says that the 1951-61 actions list them under entitled purported termination of Mishawalwapo tribe of Alexander Valley. And then if you look at each of the five claims, each of those claims specifically is linked to what they called the purported unlawful termination, which the complaint explained was the events that took place in 1959-61. Now, all of those things that were in the complaint, as well as the summary judgment briefing from Mishawalwapo, which specifically said that the termination of their matriarchy was one of the core elements for each of the five claims, led the district court to find, on pages 89 of its opinion, that that was the theory that the tribe was bringing and that each claim turned out to be an unlawful termination, or what they say is the alleged unlawful termination in 1961. In addition to looking at what was before the district court, we can look at interior notice, specifically in its brief to this court, that it believes that the theory that termination occurred at some other point or some other means had been waived. And in the reply brief, Mishawalwapo had the opportunity to go through and explain where they thought they had aired this other theory in the district court and it did not do so in the reply brief. So for all those reasons, I think that it's quite plain that the theory that was presented below was that the 1961 matriarchy and termination was the critical fact that gives rise to claims here. Now, what Mishawalwapo has argued on appeal is that it wasn't the termination that would due recognition but some other activity or some other action by the agency that occurred at an unknown point. Now, there is obviously conflict between those two theories. What I really want to emphasize to this court is that any confusion that may exist about what the Mishawalwapo plaintiff before this court, what their relationship was to the regimia, is not actually necessary to decide the issues before this court. And the reason is that the theory that Mishawalwapo presented below is that the termination is what withdrew their recognition. Now, if we assume that that's correct... Well, so, as I understand it, though, when they did the California Rancher Rancher Act, when it was voted, the tribe voted to to sell off, I guess, have the government sell off its assets, that their recognition as enshrined by the U.S. government would no longer take place. They wouldn't be taking care of their rights. So, in a way, isn't it true that even though the language is loose, that once the land was sold and the two families included,  the relationship between the U.S. government and the tribe no longer exists, which is, I think, why there's some support in the record for restoring the Indian tribe by the regional BIA and others. Sure. So, the California Rancher Act doesn't explicitly purport to terminating tribes. It talks about distributing assets and terminating the status of individuals. But, functionally, yes, when Rancheria's assets were distributed and the members at Rancheria ceased to have their, ceased to have a status as Indians, that functionally gives the relationship between the Rancheria and its interior to an end. And here, there's no indication in the record of any continued government-to-government relationships with Mishawalwapo or anyone associated with the Alexander Valley Rancheria after the 1961 termination. But, what I want to emphasize is that question of, um, that question goes to the issue of whether if Mishawalwapo is right on the merits of the theory that is presented to the district court, whether it is the proper entity that would get recognized if the termination that occurred in 1961 was unwound. The government's position is that we never actually reached that question in this case because regardless of whether the Mishawalwapo would be entitled to relief on the theory, it is simply too late to bring that challenge at this time. So that's why we now have the continuing fiduciary obligation theory in this case. And, you know, the argument as I understand it is that it would be the start of the statute of limitations because the government had a continuing fiduciary obligation to, um, I guess, take care of the entity and to give them protected status, which it didn't in 1961 and it doesn't in this term today. With respect to the question in terms of the effect of fiduciary duty on the start of the statute of limitations, it's not that as long as the duty may exist, the statute of limitations can never start running. The case is the Federal Circuit's decision in Hopland is a good one for this. That was cited in this court's unpublished decision in California Valley Miwok. What matters is whether the actions that were allegedly inconsistent with that duty were sufficiently open and obvious that the beneficiary should have known that they were occurring. Now, in Hopland, the Federal Circuit specifically found that the public termination of a rancheria was sufficient to start the limitations period running against a tribal entity that had been associated with that rancheria. And along those lines, I also understood, counsel, to argue earlier that there had been cases in which the statute of limitations is not a bar in these rancheria termination cases. That is not correct as far as I am aware. There are certainly cases that do apply the statute of limitations to claims related to the termination of a rancheria. California Valley is one example. This court's unpublished decision from the last year in the Nisenan case is an example. Now, there are other cases, the Smith case and the Duncan case that are cited in the Mishoa Wapos brief in which the statute of limitations is not addressed. But the fact that statute of limitations was not raised exactly in those cases doesn't indicate that the court was finding that the statute of  couldn't be applied to this kind of a claim. And, in fact, one of the cases that Mishoa Wapos cited, the Duncan case, was, in fact, brought within six years of the termination of the judiciary duty, and whether the actions were sufficiently whether the 1961 termination could the tribe, could Mishoa Wapos on notice or should have done so. The counsel said earlier that, you know, individual Indians weren't reading the Federal Register in 1961. That may be the case, but Federal Register publication is generally considered sufficient notice to the world. And I also want to point out that it wasn't only publication in the Federal Register that was happening. If you look in the supplemental excerpts of record, at page 25, which is from the distribution plan itself, it notes that the plan was going to be mailed to the individual persons who were going to have their status terminated. It also mentions it was going to be posted on the Ratcheria and in a local post office. And the District Court specifically found that by 1961 it would have been fairly obvious unless the statute of limitations period running, one would have been in the first 1979 list of recognized tribes, which will not appear on that list. And then also there was the hardwired litigation which was filed in 1979 and claims with regard to Alexander Valley Ratcheria were specifically dismissed from feduness in 1985. Even if we thought for some reason that the  of limitations period wouldn't have started running until then, that is still well more than six years before this action was filed. The other one other point I would just like to make quickly if I could on the statute of limitations issue is the argument in its brief. The government is content to arrest on the argument unless the court has any questions about those arguments. And for all the reasons that we said, we think that this court should confine the argument to the theory that it presented below, that the 1961 termination is the event that is the basis for their claims. If the court does not do so and it seems that it did not, it's alternate theory that some other event is the basis of their claims such that the statute of limitations hasn't started running yet, then in that case the government would again point out as we noted on our brief that there would need to be administrative exhaustion to the part 83 process and understood the part 83 process is plainly not open to times that were terminated as part of a regereous termination, but we understand this alternative theory that Mishawal Wapow has presented on appeal to be that it is not actually the successor to that regereo or that it represents some other group whose members happen to live on the regeree at some point but were not actually affected by that termination. We don't have any position on the merits of that theory, but they are welcome to try to make that claim to the interior department in the part of the  court. I would ask that you affirm the district court's decision.  it can so. I think we have four minutes left. Just restate your honors. The perception that we're arguing different on appeal than we did below is misguided. It really just depends on the issues you're standing in when you make the argument. Let's just leave that aside. Why haven't the tribe that you represent, why hasn't it gone through the 83 party upbringing process? Because the federal government has taken the position that it's not eligible for the party upbringing process. As descendants of the tribe that you just said, that you could try for recognition as a tribe that was not descended. Part of the problem is the tie up with the ranch area. The government has not been able to separate out the two because one of the members that received part of the distribution was the McLeod family. One of the originals were Dean. So is McLeod and his descendants that distributed me? Yes. They received one through the land. They were on it. So now you've got this hybrid situation where you've got either the usual WAPA arguing that they were an entirely separate entity and not affected at all by the termination, which is true. They are not affected by the termination, yet one of their members received a distribution while his descendants are foreclosed because there was a prior relationship. And the prior relationship being the Indian Reorganization Act. They're foreclosed under 70 and that was the conclusion of their regional director and their letter of support. So there is no alternative administrative remedy by which we could get through the Indian Reorganization Act. So that's the conclusion of that letter of support. So that's the conclusion of that letter of support. So that's the conclusion of that letter of support. Thank you very much. . . . . . . . . . . . . . . . . . .  . . . . . . .
judges: Wardlaw, Gould, Huff